IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BASHAN SOLOMON** | : | **Civil No. 1:17-cv-02385** |
| Plaintiff, | : | |
| v. | : | |
| **FEDEX SUPPLY CHAIN, INC.** and **RAYMOND CORP.** | : | |
| Defendants. | : | **Judge Sylvia H. Rambo** |

### **M E M O R A N D U M**

Before the court is a motion for summary judgment (Doc. 33) filed by Defendant Fedex Supply Chain, Inc. ("FedEx") seeking dismissal of the complaint (Doc. 1) filed by Plaintiff Bashan Solomon ("Solomon"). For the reasons stated herein, FedEx's motion will be granted.

### **I.   Background**

This action for negligence arises from a forklift accident and injuries sustained by Solomon in the scope of his employment in February 2017. At the time of the accident, Solomon was a contractual employee for the employment agency Randstad North America, Inc. ("Randstad") and assigned to work as a forklift operator and order picker at a FedEx distribution center (the "Distribution Center") located in Mechanicsburg, Pennsylvania, within the Middle District of Pennsylvania.

1

The rights and responsibilities of Randstad and FedEx with respect to Solomon and other Randstad staffing personnel assigned to the Distribution Center are set forth in a 2016 Master Services Agreement for Temporary Staffing (the "Staffing Agreement").[1] The Staffing Agreement provides that FedEx shall be responsible for, among other things, training, supervising, and instructing staffing personnel, as well as maintaining a safe and legal workplace. (Doc. 33-4, pp. 7-8, 13 of 34.) It similarly provides that FedEx shall retain such direction and control over staffing personnel as it determines in its sole discretion to be appropriate to conduct its business, including the right to accept, reject, and remove staffing personnel. (*Id*., pp. 5-6 of 34.) At the same time, the Staffing Agreement provides that Randstad is "solely responsible for selecting, hiring, disciplining, reviewing, evaluating and terminating Staffing Personnel," as well as paying their wages and maintaining their benefits. (*Id*., pp. 4-5 of 34.)

Solomon testified that he was assigned to his position at the Distribution Center after undergoing an interview and several days of new hire training provided by FedEx. (Doc. 38-4, 144:19-145:4; 175:16-22.) That training included classroom and hands-on training, certification tests, and training on three types of forklifts, including the type that Solomon was operating at the time of the accident. (*Id.*, 147:5-

---

[1] The Staffing Agreement was entered into by Randstad and GENCO I, INC. ("GENCO"). GENCO was subsequently acquired by and rebranded as FedEx. (Doc. 33, n.2.)

12; 149:6-16.) After satisfactorily completing the training, Solomon reported to the Distribution Center on February 5, 2017 for his first day of work. (*Id.*, 176:9-177:4; 257.) There, Solomon attended a pre-shift meeting run by FedEx management personnel and received his specific shift assignment from a FedEx supervisor. (*Id.,* 259:1-261:8.) As part of his shift assignment, Solomon was directed to shadow a FedEx employee. (*Id.*, 260:22-261:8; 391:23-393:1.) Later during that same shift, while he was operating a standup forklift, Solomon collided with a parked forklift and sustained serious leg injuries. (*Id.*, 178:18-179:2; Doc. 33, p. 8 of 24.)

In September 2017, Solomon initiated this action by filing a complaint in the Pennsylvania Court of Common Pleas alleging negligence and other claims against Fedex Supply Chain Distribution System, Inc., Fedex. Corp., and Raymond Corp. (Doc. 1, p. 18 of 38.) In November 2017, the case was removed to the Eastern District of Pennsylvania. (Doc. 1, p. 7 of 38.) There, Fedex Corp. and Fedex Supply Chain Distribution System were dismissed on mutual consent, FedEx was substituted in as the proper defendant, and the caption was amended accordingly. (Docs. 2-3.) In December 2017, the Eastern District of Pennsylvania transferred the case to this court. (Doc. 15.) This court thereafter granted Raymond Corp.'s unopposed motion for summary judgment and dismissed it from this action. (Doc. 37.)

3

In March 2019, FedEx filed its present motion for summary judgment, requesting dismissal of Solomon's remaining claims for negligence on the basis that it was Solomon's statutory employer and is therefore immune from suit under the Pennsylvania Workers' Compensation Act (the "PWCA"). (Docs. 33-34.) The matter has been fully briefed and is ripe for disposition.

## II. **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving

4

party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III. Discussion**

**A. FedEx was Solomon's statutory employer under the PWCA.**

The court finds that FedEx was Solomon's statutory employer pursuant to the borrowed servant doctrine, entitling it to immunity under the Pennsylvania Workers' Compensation Act ("PWCA").[2]

"Employees who are injured at work are limited to the compensation available to them under the PWCA and cannot separately sue their employers for personal injury. This immunity from suit extends from the direct employer to another entity that has 'borrowed' the employee if the latter exercises sufficient control over the employee." *Ochs v. Reading Hosp.*, 647 F. App'x 126, 128 (3d Cir. 2016) (citing 77 Pa. Stat. § 481(a) (2002); *Claudio v. MGS Mach. Corp.*, 798 F. Supp. 2d 575, 581 (E.D. Pa. 2011)). Under this borrowed servant doctrine, "[t]he crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner*

---

[2] Both parties devote significant attention in their briefs to the issue of whether, separate and apart from the borrowed servant doctrine, FedEx is entitled to immunity as a statutory employer under the five-part test articulated by the Pennsylvania Supreme Court in *McDonald v. Levinson Steel Co.*, 302 Pa. 287 (Pa. 1930). They also debate the appropriate weight of authority that attaches to a recent unpublished and somewhat factually analogous case decided by the Superior Court of Pennsylvania in *Matranga v. U-Haul Co. of Pennsylvania*, No. 1067-EDA-2017, 2018 WL 3084142 (Pa. Super. Ct. June 22, 2018). Given the court's determination that FedEx was Solomon's statutory employer under the borrowed servant doctrine, it will not address these arguments.

6

*of performing it.*" *Wilkinson v. K-Mart*, 603 A.2d 659, 661 (Pa. Super. Ct. 1992) (quoting *Ashman v. Sharon Steel Corp.*, 448 A.2d 1054, 1058 (Pa. Super. Ct. 1982)) (emphasis in *Ashman*). A borrowed employee "is not a contractual employee but a statutory employee," and the borrowing employer a statutory employer. *Poyner v. Georgia Pac. Corp.*, No. 02-cv-7937, 2004 WL 595265, at *4 (E.D. Pa. Mar. 18, 2004).

In determining whether a defendant is a statutory employer under the borrowed servant doctrine, "any factual discrepancies are for the trier of fact to resolve." *Virtue v. Square D Co.*, 887 F. Supp. 98, 100 (M.D. Pa. 1995) (citation omitted). However, where the material facts are not in dispute, the issue of whether an employer is a statutory employer under the borrowed servant doctrine and the PWCA is a question of law and therefore "properly the subject of a motion for summary judgment." *Id.* (quoting *Wilkinson*, 603 A.2d at 660–61).

Here, there is no issue of fact that FedEx had the right to control Solomon's work, work location, and the manner in which Solomon performed his work. The Staffing Agreement provides that FedEx "shall be responsible for," among other things, "maintaining a safe, healthy, and legal workplace for Staffing Personnel," and "providing Staffing Personnel with site specific instruction, and supervision[.]" (Doc. 33-4, p. 7 of 34.) It similarly directs that FedEx "shall retain such direction and control over Staffing Personnel as [FedEx] determines, in its sole discretion, is

7

appropriate to the conduct of [FedEx's] business, including but not limited to the right to accept or reject in its sole discretion any Staffing Personnel or to remove any Staffing Personnel at any time from a [FedEx] facility." (*Id*., pp. 5-6 of 34.)

Moreover, Solomon's testimony demonstrates that FedEx did in fact exercise such control. Solomon testified that the Distribution Center was run and operated by FedEx (Doc. 38-4, 397:1-4); that he reported to FedEx employees before beginning his shift (*id.,* 259:1-261:8); and that FedEx exclusively controlled the manner in which he performed his work:

> Q: When you were moving the pallet to a particular location, you were told where to move that pallet by FedEx [ ]?
>
> A: Yes. I believe the – if we can go back? I believe the ticket actually let you know where to stage the pallet.
>
> Q: So all the information that you would receive and the ticket came from FedEx [ ] to tell how to do it and where to do it?
>
> A: Yes. That was redundant on my part.

(*Id.*, 396:7-17; *see also* 395:14-396:1; 396:18-24.)

This evidence demonstrates that FedEx had the right to, and did, exercise sufficient control over Solomon to be considered his statutory employer under the borrowed servant doctrine and the PWCA. *See, e.g*., *Claudio*, 798 F. Supp. 2d at 584 ("By creating assignments for Claudio and instructing him how to accomplish them, TBC exercised the dispositive control."); *see also Poyner*, 2004 WL 595265, at *3 ("The right to instruct a driver as to the route to take indicates the presence of the

8

right to control the manner of performing the driver's work.") (quoting *Wilkinson*, 603 A.2d at 662).

FedEx's status as a statutory employer is reinforced by the undisputed fact that FedEx supplied Solomon with all of his operating equipment at the warehouse, including the forklift he was operating at the time of the accident. "Under Pennsylvania law, this is a significant distinction" from those situations where a company leases out its operators and equipment, and in turn supports a finding of statutory employer status.[3] *Ashman*, 448 A.2d at 1058; *see Zaragoza v. BASF Const. Chemicals, LLC*, No. 08-cv-96, 2009 WL 260772, at *3 (E.D. Pa. Feb. 3, 2009) ("Pennsylvania courts have consistently distinguished cases where, as here, an employee is borrowed without equipment from his original employer. Under such circumstances, the crucial test remains the issue of control."); *see also Wilkinson,* 603 A.2d at 662.

Solomon argues that a fact issue exists because Randstad was responsible for his initial hiring, managing his benefits, paying his salary, and imposing discipline including termination. However, Randstad's responsibility for initially hiring and terminating staffing personnel means little given that it was the right of FedEx to

---

[3] Solomon's testimony that Randstad provided him with an orange safety vest, which was also worn by other FedEx employees, does not create a fact issue under the borrowed servant doctrine. *See, e.g.*, *Nagle v. TrueBlue, Inc.*, 148 A.3d 946, 955–56 (Pa. Commw. Ct. 2016) (applying borrowed servant doctrine notwithstanding that a separate employment agency provided the plaintiff "with general safety training and gloves for jobs").

9

"accept, reject, and remove staffing personnel" from the Distribution Center. *See O'Donnell v. New England Motor Freight*, 373 F. App'x 182, 184 (3d Cir. 2010). More importantly, these various factors are "peripheral matters and are not controlling." *Ochs*, 647 F. App'x at 128 (quoting *Wilkinson*, 603 A.2d at 661). None call into question the undisputed control that FedEx had the right to, and did, exercise during Solomon's short time working at the Distribution Center. *See Claudio,* 798 F. Supp. 2d at 582 (third-party defendant was plaintiff's statutory employer under the borrowed servant doctrine notwithstanding that a separate staffing company hired the plaintiff, paid his salary and benefits, and maintained a role in matters regarding discipline and termination); *Latham v. Weyerhaeuser Co.*, No. 19-cv-0451, 2019 WL 4886535, at *3 (E.D. Pa. Oct. 3, 2019) ("To the extent that Aerotek maintained responsibility over payroll, benefits and taxes, these factors are only peripheral matters. And whether Aerotek or Weyerhaeuser had the ultimate authority to terminate Latham also carries little weight in the Court's analysis.") (internal quotation marks and citations omitted).

Nor does Solomon's completion of a Randstad-administered online training course prior to his work at the Distribution Center undermine FedEx's strong showing of control. Like the above peripheral matters, an employee's status as a specialist is but one factor "to consider in determining the presence of the requisite control." *Ochs*, 647 F. App'x at 129; *see JFC Temps, Inc. v. W.C.A.B. (Lindsay)*,

680 A.2d 862, 866 (1996). However, the significance of this factor "has diminished under Pennsylvania law," *Ochs*, 647 F. App'x at 129—and here, Solomon's prior training is insufficient to overcome FedEx's undisputed right and exercise of control over Solomon and his work. *See Claudio,* 798 F. Supp. 2d at 582–83 (applying borrowed servant doctrine notwithstanding that a separate staffing company "played a part in [the plaintiff's] training"); *Nagle*, 148 A.3d at 955–56 (applying borrowed servant doctrine notwithstanding that a separate staffing company provided the plaintiff "with general safety training"); *Haubrich v. Lyondell Chem. Worldwide, Inc.*, No. 01-cv-1955, 2001 WL 1160590, at *1 (E.D. Pa. Aug. 1, 2001) (applying borrowed servant doctrine notwithstanding that the plaintiff had received two years of prior training as a chemist).

In any event, the record does not support that Solomon was a specialist. Before beginning at the Distribution Center, Solomon underwent several days of FedEx-administered training on seemingly every aspect of his job there, including classroom and hands-on training and examinations, job shadowing, and training on the particular forklift that he was operating at the time of the accident. If anything, Solomon's training supports FedEx's status as a statutory employer. *See, e.g.*, *Ochs*, 647 F. App'x at 129; *Claudio,* 798 F. Supp. 2d at 582.

Finally, Randstad's contractual responsibility for reviewing and evaluating its staffing personnel also does not create an issue of fact as to whether FedEx had

11

sufficient control over Solomon to be his statutory employer. *See O'Donnell*, 373 F. App'x at 185 ("While Transforce retained some control over O'Donnell, NEMF exercised control over O'Donnell's performance of the work at the NEMF facility, the key inquiry"); *see also English v. Lehigh Cty. Auth.*, 428 A.2d 1343, 1349 (Pa. Super. Ct. 1981). As discussed more fully above, Randstad had no presence at the Distribution Center, and FedEx had the exclusive contractual right to (and did) control and direct Solomon in the performance of his work. While Randstad's amorphous contractual right to review its staffing personnel might be relevant in cases where the issue of control is less clear cut, here it does not affect the court's conclusion that FedEx was Solomon's statutory employer. The undisputed facts remain that FedEx controlled Solomon's work, work location, and manner of performance; provided him with his assignments and equipment; and trained him in virtually every aspect of his job. FedEx was thus Solomon's statutory employer and is immune from suit under the PWCA.

## IV. **Conclusion**

For the reasons explained above, the court will grant FedEx's motion for summary judgment and dismiss the complaint as asserted against FedEx with prejudice. An appropriate order shall follow.

>*/s/ Sylvia H. Rambo*
>SYLVIA H. RAMBO
>United States District Judge

Dated: January 14, 2020